IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHANNON ZAMZIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-439-RAW-SPS |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

The claimant Shannon Zamzis requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was thirty-four years old at the time of the administrative hearing (Tr. 50). She has a ninth-grade education and past relevant work as a home health aide and certified nurse aide (Tr. 33, 339). The claimant alleges that she has been unable to work since March 31, 2017, due to bipolar disorder, depression, and migraine headaches (Tr. 338).

## Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on April 5, 2017. Her application was denied. ALJ David W. Engel conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated April 17, 2020 (Tr. 15-36). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step four, he found that the claimant had the residual functional capacity ("RFC") to lift/carry/push/pull at light and sedentary exertions, stand/walk up to two hours in an eight-hour workday with regular work breaks, and sit six hours in an eight-hour workday with

3

regular breaks. Additionally, he found she could only occasionally climb ramps/stairs, bend, stoop, crouch, crawl, reach overhead for purposes of hand controls, or use foot pedals, and that she could never climb ropes/ladders/scaffolds, work in environments where she would be exposed to dangerous moving machinery or unprotected heights. He further found she could understand, remember, and carry out simple instructions in a work-related setting, interact with co-workers and supervisors under routine supervision, and only occasionally interact with the general public (Tr. 24-25). Finally, he stated that she was "afflicted with symptoms from a variety of sources to include moderate intermittent pain and fatigue, as well as mental impairments, all variously described, that are of sufficient severity so as to be noticeable to her at all times, but nevertheless is able to remain attentive and responsive in a work-setting and would be able to perform work assignments within the above-cited limitations" (Tr. 25). The ALJ then found that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, document preparer, semi-conductor bonder, and touch-up screener (Tr. 35).

## Review

The claimant contends that the ALJ failed to properly account for her migraines in formulating her RFC and improperly discounted her testimony and statements as to the same. The undersigned Magistrate judge is not persuaded by the claimant's arguments.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease, obesity, bipolar disorder, migraine headaches, and post-traumatic stress disorder (PTSD). The relevant medical evidence as to the claimant's migraines reflects

that the claimant regularly complained of and was treated for migraines, including prescription medication and medication adjustments (Tr. 492, 516, 519, 532, 583, 588, 655). An MRI from 2016 was considered unremarkable, showing no acute abnormality, but she did have several subcortical sebaceous cysts (Tr. 594, 665). In September 2017, she was referred to a neurologist before her medication would be increased (Tr. 583). In the fall of 2017, the claimant took a fourteen-day trial of indomethacin which produced good results while she was on the medication, but headaches returned after the fourteen-day trial ended (Tr. 594). On February 22, 2018, treatment notes indicate that the claimant had some improvement with medication, but she was considered to have an intractable migraine with aura, without status migrainosus (Tr. 588). She was assessed with complicated migraine, reporting previously effective medication was no longer working. Dr. Janice Keating, M.D., suspected some psychiatric overlay, but she could not completely rule out seizure or other causes of syncope (Tr. 665). In June 2018, Dr. Keating again noted she felt the claimant's migraines might be psychogenic in origin or related to complicated migraine and found that reports of syncope/collapse might be migraine related or also psychogenic (Tr. 682). By January 2019, Dr. Keating indicated that the claimant's spells of syncope/collapse had not recurred for six months, and that her migraines were much improved although still occurring two to three times per week, seeming to radiate from one of the sebaceous cysts (Tr. 759). At that appointment, Dr. Keating indicated that she believed the claimant's symptoms were functional in nature with some psychiatric overlay (Tr. 759). On the spring of 2019, Dr. Keating indicated that the claimant's migraines were still occurring three days per week, accompanied by occasional tunnel

vision, and medication had a limited effect (Tr. 754, 785). In June 2019, treatment notes from Dr. Steven Anagnost indicate that the claimant had cervical radiculopathy and cervicalgia (neck pain) and recommended surgery at C6-7 (Tr. 809-810). She was still having migraines and her bipolar disorder was also noted as a mental health component (Tr. 808-810). In October 2019, the claimant reported a migraine at an office visit, with headaches occurring four times per week, and she was given an injection (Tr. 797-798).

The administrative record contains no consultative examining opinions as to the claimant's physical impairments. State reviewing physicians determined initially and upon review that the claimant could perform the full range of medium work (Tr. 129-130, 143-144).

At the administrative hearing, the claimant testified in relation to her migraines that she stopped driving in 2016 because she started blacking out behind the wheel due to migraine headaches, and that she had let her driver's license expire (Tr. 51-52). She stated that she used to go hiking as a hobby, but that the sun aggravates her migraines and walking aggravates her hip (Tr. 57). She also stated that lighting, sounds, smells, computer screens, and stress aggravate her migraines (Tr. 63). She testified that she has migraines twice a week that are bad enough that she could black out, which causes a lot of falls (Tr. 62-63).

In his written opinion at step four, the ALJ extensively summarized the claimant's hearing testimony and the medical evidence in the record. As to her migraines, he noted the claimant reported in 2016 that she had been experiencing a headache for sixteen months, but that there were no records prior that supported this claim, and that her pain had improved from a scaled of 10/10 to 3/10 with medication (Tr. 27). He noted she continued

6

to complain of migraines but that imaging was normal (Tr. 27). He noted the fourteen-day course of medication but that "[d]espite improvement, she stopped taking the medication and her headaches gradually returned and were present on a near daily basis" (Tr. 28). The ALJ also noted Dr. Keating's treatment notes that there might be a psychological overlay to her symptoms, and that she had reported in 2018 that her migraine medication was effective (Tr. 28). He also summarized additional treatment notes related to her migraines (Tr. 27-30). Additionally, he found that the claimant's testimony was not consistent with the evidence in the record because: (i) her husband had indicated she takes her daughter to therapy twice a week, which requires driving; (ii) that she was able to cook simple meals with a headache and elaborate meals without one; (iii) that she indicated in a report that she took care of her daughter, but testified at the hearing that her husband took care of their daughter; (iv) that she reported she no longer drove but had presented herself to the emergency room in 2019 alone and was unaccompanied at discharge, driving herself home (Tr. 27-31). The ALJ found that the claimant had "symptoms from a variety of sources to include moderate intermittent pain and fatigue, as well as mental impairments, all variously described, that are of sufficient severity so as to be noticeable to her at all times, but nevertheless is able to remain attentive and responsive in a work-setting and would be able to perform work assignments within the above-cited limitations" (Tr. 31). The ALJ ultimately concluded that the claimant was not disabled (Tr. 36).

    The claimant first contends that the ALJ erred in failing to properly account for her migraines in her RFC. An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an

7

administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7. Here, the ALJ has fulfilled his duty.

The claimant nevertheless asserts that the evidence does not support a finding that she can perform work at the assigned RFC level in light of her migraines. Contrary to claimant's arguments, however, the ALJ discussed *all* the evidence in the record and his reasons for reaching the RFC. *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The evidence reflects that the ALJ clearly considered the

entirety of the record, including the entirety of evidence related to her migraine headaches, by discussing it at several points at step four and noting how it informed his decision. Furthermore, she has pointed to no medical documentation providing further limitations. The claimant alleges that the ALJ misstated the evidence related to her fourteen-day trial of indomethacin because he stated that, she stopped taking it "despite improvement" and he underlined this sentence in the opinion (Tr. 28). However, there is no indication that the ALJ relied solely on this one notation for his findings related to the claimant's migraines. Additionally, the evidence reflects no further functional limitations for the claimant's migraines, and the ALJ clearly considered them by discussing them at several points at step four and noting how *all* of her impairments informed her RFC assessment. Because she points to no evidence other than her own assertions, the Court declines to find an error here. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority.").

In conjunction with the previous arguments, the claimant contends that the ALJ erred in analyzing her subjective statements, particularly as related to her pain. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent agrees but characterizes the evaluation as a three-part test. *See, e. g., Keyes-Zachary,* 695 F.3d at 1166-67 (*citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2016 WL 1119029, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]"

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna*) and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2016 WL 1119029, at *10.

As outlined above, the Court finds that the ALJ set out the appropriate analysis and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his evaluation is entitled to deference. *See Casias*, 933 F.2d at 801.

The ALJ specifically noted every relevant medical record available in this case, gave reasons for his RFC determination, and ultimately found that the claimant was not disabled. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (*citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES that correct legal standards were applied by the ALJ and the decision of the Commissioner is therefore supported by substantial evidence. Accordingly, the undersigned RECOMMENDS that the decision of the Commissioner be AFFIRMED. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 7th day of March, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**